## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLOS GARCIA,<br>    Petitioner, | :<br>:<br>: |
| v. | :     Case No. 3:25-cv-387 (SRU) |
| | : |
| WARDEN, FCI DANBURY,<br>    Respondent. | :<br>: |

## MEMORANDUM OF DECISION

*Pro se* petitioner Carlos Garcia is a sentenced inmate in the custody of the Federal Bureau of Prisons ("the BOP"). Garcia filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 asserting that a BOP disciplinary hearing officer ("DHO") unlawfully sanctioned him for disciplinary violations. Pet., Doc. No. 1. The Petition seeks an order compelling the BOP to reinstate 41 days of good conduct time credits ("GCT credits") Garcia lost through the disciplinary process. After careful consideration, I **DENY** Garcia's petition.

**I.    BACKGROUND**

Garcia was sentenced to 60 months' imprisonment on May 2, 2022. *See United States v. Garcia*, 2:21-cr-00884-KSH (D.N.J.), Doc. No. 29 (amended judgment). While serving his sentence at USP Lewisburg in Lewisburg, Pennsylvania, Garcia received sanctions for disciplinary violations resulting in loss of GCT credits. *See* Resp. Ex. A, Doc. No. 11-2, at 4; Resp. Ex. B, Doc. No. 11-3, at 5. The BOP subsequently transferred Garcia to FCI Danbury in Danbury, Connecticut. From there, Garcia filed the habeas petition now before me. *See* Pet., Doc. No. 1, at 1 (petition bearing FCI Danbury address). I ordered the Warden of FCI Danbury, Rick Stover,[1] to file a response to the habeas petition, *see* doc. no. 9, which he filed in May of

---

[1] *Rivera-Perez v. Stover*, 757 F. Supp. 3d 204, 206 (D. Conn. 2024) (recognizing Rick Stover as the Warden at FCI Danbury).

this year. Resp., Doc. No. 11. At some point while this case was pending, the BOP transferred Garcia from FCI Danbury to RRM New York, a residential reentry center ("RRC")[2] in New York, New York.[3]

## II. LEGAL STANDARD

A federal prisoner may petition for habeas relief if he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (internal citations omitted). Thus, habeas petitioners may seek relief under section 2241 "to challenge 'such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" *McPherson v. Lamont*, 457 F. Supp. 3d 67, 74 (D. Conn. 2020) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001), and collecting other Second Circuit cases).

Garcia's challenge to his loss of GCT credits falls within the categories of challenges that may be brought under section 2241. *See Jiminian*, 245 F.3d at 146 (listing "computation of a prisoner's sentence by prison officials" as permissible grounds for a section 2241 petition); *Reyes v. Willingham*, 2005 WL 3543726, at *1 n.2 (D. Conn. Dec. 23, 2005) (citing *Jiminian*, 245 F.3d at 146) ("A habeas challenge to the calculation of good time credit is properly filed pursuant to § 2241 because calculating good time credit relates to the execution of a sentence.").

---

[2] An RRC is also known as a "halfway house." *See Fournier v. Zickefoose*, 620 F. Supp. 2d 313, 314 (D. Conn. 2009).

[3] *See* BOP, *Inmate Locator*, https://www.bop.gov/inmateloc/ (Reg. No. 21520-509) (last visited July 14, 2025). I "may take judicial notice of the BOP website." *Palmer v. Flowers*, 2025 WL 1220183, at *1 n.1 (D. Conn. Apr. 28, 2025).

Garcia "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, [he] must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

### III. JURISDICTION

Before I consider whether Garcia has met his burden of proving that he is being held contrary to law, I must first examine whether I have jurisdiction to consider the Petition after the BOP transferred Garcia to RRM New York. *See Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 328 (2d Cir. 2005) ("[W]here jurisdiction is questionable [a court is] obliged to examine the question *sua sponte.*"). Garcia's transfer from FCI Danbury to RRM New York poses two jurisdictional questions: (1) whether I lost jurisdiction over Garcia's habeas petition when he transferred to a BOP facility outside of the District of Connecticut, and (2) whether Garcia's transfer to an RRC renders his request for reinstatement of GTC credits moot. I address each question in turn.

Habeas jurisdiction is "not jurisdictional in the sense of a limitation on subject-matter jurisdiction." *Skaftouros*, 667 F.3d at 146 n.1 (quotation marks omitted) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 451 (2004) (Kennedy, *J.*, concurring)). There are "two traditional requirements for a federal court to entertain a habeas petition: that the petition be filed in the district of confinement and that it name the petitioner's immediate custodian." *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025) (citing *Padilla*, 542 U.S. at 438; 28 U.S.C. § 2242). "[H]abeas jurisdiction attaches on the initial filing for habeas relief, and a district court retains jurisdiction even when a petitioner is transferred after filing to the custody of a different custodian in a different judicial district." *Dailey v. Pullen*, 2023 WL 3456696, at *2 (D. Conn. May 15, 2023)

(citing *Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 26 n.1 (2d Cir. 2019) (summary order); *Middleton v. Schult*, 299 F. App'x 94, 95 n.1 (2d Cir. 2008) (summary order)).

When Garcia filed the Petition on March 17, 2025 he was confined at FCI Danbury in Danbury, Connecticut. *See* Pet., Doc. No. 1, at 1. The Petition properly named as respondent Garcia's then-custodian, "Warden, FCI Danbury." *Id.* Garcia properly filed the Petition in the judicial district in which FCI Danbury is located, the District of Connecticut. Accordingly, this Court initially obtained jurisdiction over the Petition, and it retains jurisdiction over the Petition even though the BOP has since transferred Garcia to RRM New York. *See Dailey*, 2023 WL 3456696, at *2; *Padilla*, 542 U.S. at 441 (noting that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.").

However, merely retaining habeas jurisdiction over the Petition is a necessary but insufficient condition to awarding the relief that Garcia seeks—namely, ordering BOP to reinstate 41 days of lost GTC credits. *See* Pet., Doc. No. 1, at 8. A habeas petition must be "directed to the person having custody of the person detained," 28 U.S.C. § 2243, and that custodian must be within "reach[ ] by service of process." *Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 495 (1973). Because the BOP transferred Garcia to RRM New York, the Petition is no longer "directed to" Garcia's current custodian.[4] And the Director of RRM New York is not within "reach by service of process." *See, e.g.*, *Mendez v. United States*, 2009

---

[4] Other courts have determined that the "Director" of the RRM New York is the custodian of any inmate held there. *See, e.g.*, *Vogel v. Berlin*, 2024 WL 3993157, at *1 n.1 (D.N.H. Aug. 14, 2024), *report and recommendation approved sub nom. Vogel v. US Att'y Gen.*, 2024 WL 3991654 (D.N.H. Aug. 29, 2024).

4

WL 4857490, at *1 (S.D.N.Y. Dec. 11, 2009) (noting that warden of FCI Seagoville, located in the Northern District of Texas, "cannot be reached by service of process from [the United States District Court for the Southern District of New York].").

But unlike cases in which a petitioner challenges conditions of confinement at a specific facility, and thus seeks injunctive relief against an immediate custodian, Garcia seeks relief in the form of reinstatement of lost GCT credit. *See* Pet., Doc. No. 1, at 8. That type of relief can be effectuated by the BOP generally, not any one warden specifically. *See* 28 C.F.R. § 0.96 (delegation of authority to the BOP to compute sentences and designate an inmate's place of imprisonment or confinement). "The District of Connecticut has the BOP 'within reach of its process,' and may therefore direct the writ to the BOP generally." *Rivera-Perez*, 757 F. Supp. 3d at 211 (quoting *Ex Parte Endo*, 323 U.S. 283, 306–07 (1944)). Accordingly, I may properly exercise jurisdiction over Garcia's petition despite his transfer from FCI Danbury to RRM New York.

While Garcia's transfer from FCI Danbury to RRM New York does not deprive the Court of habeas jurisdiction over Garcia's Petition, the Court may nevertheless lose subject matter jurisdiction over the action if the case becomes moot. *See Fox v. Bd. of Trs. of State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994) ("When a case becomes moot, the federal courts lack subject matter jurisdiction over the action.") (cleaned up). A habeas case may become moot after a prisoner is transferred to an RRC, as opposed to another prison, because a court may not be able to award the relief requested by the habeas petitioner. *See Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."); *Fournier*, 620 F. Supp. 2d at 317 (habeas petition seeking placement at RRC would become moot if petitioner was released to RRC). Here,

5

however, Garcia's transfer to an RRC does not moot his petition because he is still serving his sentence and is still in BOP custody. *See* 18 U.S.C. § 3624(c)(1) (authority to transfer a prisoner to prerelease custody during the final twelve months of their sentence). Reinstatement of GCT credits Garcia lost could therefore be used to reduce his RRC term. *See id.* § 3624(b)(1) (a prisoner "may receive credit toward the service of the prisoner's *sentence*" (emphasis added)). Accordingly, Garcia's transfer to an RRC does not deprive me of subject matter jurisdiction.

Having established that I have retained jurisdiction over the Petition notwithstanding Garcia's transfer to RRM New York, I now consider the merits of the Petition and the defenses asserted by Warden Stover.

## IV. DISCUSSION

Warden Stover argues that Garcia's habeas petition should be denied on two grounds: (1) that Garcia failed to exhaust his administrative remedies and (2) that Garcia's claim fails on the merits. *See* Resp., Doc. No. 11, at 2. I will discuss each in turn.

### A. Exhaustion

"The Second Circuit has made clear that a petitioner must exhaust h[is] administrative remedies prior to filing an action under § 2241." *Daraio v. Lappin*, 2009 WL 303995, at *3 (D. Conn. Feb. 9, 2009) (citing *Carmona,* 243 F.3d at 634 (citation omitted)). Section 2241's exhaustion requirement is judicial, not statutory.[5] *Carmona*, 243 F.3d at 634. "[T]he distinction between the two exhaustion requirements can be 'pivotal,' because statutory exhaustion

---

[5] I acknowledge the open question of whether the Prison Litigation Reform Act's ("PLRA") exhaustion requirement also applies to section 2241 actions. *See Atiyas v. Stover*, 2024 WL 343029, at *2 (D. Conn. Jan. 30, 2024). But, like the Court in *Atiyas*, I decline to apply the PLRA's exhaustion requirement in section 2241 actions "[u]ntil such time as the Second Circuit resolves this issue." *Id.*

6

requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions." *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (internal quotations and citations omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). To properly exhaust administrative remedies under the judicially imposed exhaustion requirement, a petitioner must comply with the four-step Administrative Remedy Program established by the BOP, *see Atiyas*, 2024 WL 343029, at *2 (describing the four steps that must be taken before filing a § 2241 petition), culminating in an appeal to the BOP General Counsel. 28 C.F.R. § 542.15(a); *See also Emery v. Pullen*, 2023 WL 348114, at *5 (D. Conn. Jan. 20, 2023) ("[A]n inmate's claim is not considered fully exhausted until it is considered by the BOP General Counsel[.]") "In section 2241 actions, the burden of demonstrating exhaustion of administrative remedies is on the petitioner." *Paulino v. Flowers*, 2025 WL 297388, at *1 (D. Conn. Jan. 24, 2025).

Garcia does not maintain that he properly exhausted his administrative remedies. *See* Pet., Doc. No. 1, at ¶ 12. BOP grievance records submitted by Warden Stover confirm that Garcia failed to exhaust his administrative remedies. *See* Ex. E, Doc. No. 11-6, at 4–7. But because section 2241's exhaustion requirement is judicially created, "a court has discretion to excuse the administrative exhaustion requirement for federal prisoners." *Donato v. Pullen*, 2023 WL 1967340, at *4 (D. Conn. Feb. 13, 2023). The Second Circuit has identified four bases to excuse administrative exhaustion in the habeas context: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate

7

judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F.3d at 62 (internal citations omitted).

Garcia maintains that he "took the appropriate steps to timely file his BP-10 administrative appeal grievance form, but those efforts were, at the very least, hindered—if not affirmatively thwarted—by the prison staff's refusal to forward Petitioner's mail to the prison mailroom." Pet. Memo., Doc. No. 1-1, at 3. Warden Stover responds that Garcia's explanation for his failure to exhaust is conclusory and does not exempt him from exhausting administrative remedies under *Beharry*. *See* Resp., Doc. No. 11, at 6. I disagree.

First, Garcia's explanation is supported by a detailed factual narrative. *See* Pet. Memo., Doc. 1-1, at 1–2. I may accept as true[6] his non-conclusory allegations that "[w]hile in the SHU, Petitioner provided his complete BP-10 grievance form for mailing to BOP staff[,]" but "BOP staff did not mail Petitioner's envelopes that contained the BP-10 forms at all[,] and the BOP staff withheld the Petitioner's incoming mail." Pet., Doc. 1, at 7. Garcia's conclusory allegation that prison officials "thwarted" his attempts to exhaust administrative remedies therefore carries more weight than it otherwise would standing alone. *See*, *e.g.*, *Lane v. Doan,* 287 F. Supp. 2d 210, 212–13 (W.D.N.Y. 2003) (prisoner deemed to have exhausted administrative remedies where record was clear that he made reasonable efforts to exhaust but was impeded by prison officials).

---

[6] *See Cardoza v. Pullen*, No. 3:22-CV-00591 (SVN), 2022 WL 3212408, at *1 (D. Conn. Aug. 9, 2022) (accepting allegations in section 2241 petition as true in deciding whether dismissal was warranted).

Second, though Garcia's explanation for his failure to exhaust does not fit neatly within the categories described by the Second Circuit in *Beharry*, "available remedies provide no genuine opportunity for adequate relief" if BOP staff obstruct Garcia's ability avail himself of those remedies. *See Gadson v. Goord*, 2002 WL 982393, at *3 (N.D.N.Y. May 10, 2002) ("Prison authorities cannot have it both ways—they cannot obstruct an inmate's pursuit of administrative remedies exhaustion by failing to comply with statutory procedure on the one hand, and then claim that the inmate did not properly exhaust these remedies on the other."). Accordingly, although Garcia did not properly exhaust his administrative remedies, his failure to exhaust is excused.

**B.     Merits**

Garcia asserts a single claim in his habeas petition: that the DHO imposed excessive sanctions on him by disallowing 82 GCT credits in one year. *See* Pet., Doc. No. 1, at 7. Warden Stover maintains that (1) the sanctions imposed were within the limits provided by BOP regulations, (2) those regulations do not cap the number of GCT credits that an inmate may lose, and (3) the two sanctions that resulted in the loss of 82 GCT credits fell within two separate accounting periods. *See* Resp., Doc. No. 11, at 8. I agree with Warden Stover but need not address his third argument.

The Code of Federal Regulations contains a subpart "describ[ing] the Federal Bureau of Prisons' (Bureau) inmate discipline program[,]" which "is authorized by 18 U.S.C. 4042(a)(3)." 28 C.F.R. § 541.1. The inmate discipline program ("IDP") "helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts." *Id.* The IDP, which "applies to sentenced and unsentenced inmates in Bureau custody," 28 C.F.R. § 541.2, provides a list of

9

"[p]rohibited acts" and "[a]vailable sanctions." 28 C.F.R. § 541.3(a)–(b). "The list of prohibited acts are divided into four separate categories based on severity: Greatest; High; Moderate; and Low." *Id.* § 541.3(a). The prohibited acts are listed in "Table 1—Prohibited Acts and Available Sanctions." *Id.* That table also lists "available sanctions for committing prohibited acts[.]" *Id.* § 541.3(b). In addition to the types of sanctions listed in section 541.3, inmates "will lose good conduct sentence credit as a mandatory disciplinary sanction" if the inmate belongs to a certain class of inmates and commits certain prohibited acts. *See* 28 C.F.R. § 541.4(a)–(b).

Garcia received two disciplinary reports while at USP Lewisburg. Garcia received the first disciplinary report for possession of hazardous contraband (Code 108 violation), possession of anything not authorized (Code 305 violation), and possession of non-hazardous contraband (Code 331 violation) after possessing a vape device, iPhone, and phone charger on March 7, 2024. Resp. Ex. B, Doc. No. 11-3, at 2. Garcia pled guilty to the offenses, *see id.* at 3, and the DHO sanctioned Garcia to 41 days' loss of GCT credits, 40 days' segregation, and loss of other privileges. *See id.* at 5. Garcia received a second disciplinary report for possession of hazardous contraband (Code 108 violation) after possessing an MP3 player and iPhone on August 1, 2024. Resp. Ex. A, Doc. No. 11-2, at 2. After pleading guilty to the offense, *see id.*, the DHO sanctioned Garcia to 41 days' loss of GCT credits, forfeiture of 67 days' non-vested GCT credits, 75 days' segregation, and loss of other privileges. *See id.* at 4.

Garcia maintains that the DHO unlawfully imposed sanctions of 41 days' loss of GCT credits for each offense because "28 CFR 541.3 specifically states that the BOP cannot sanction an inmate to more than 54 days loss of good time credit per year." Pet., Doc. No. 1, at 7. I disagree.

Petitioner pled guilty to committing two Code 108 offenses.[7] *See* Resp. Ex. B, Doc. No. 11-3, at 3; Resp. Ex. A, Doc. No. 11-2, at 2. Under Table 1 in 28 C.F.R. § 541.3, Code 108 offenses are listed under "Greatest Severity Level Prohibited Acts." 28 C.F.R. § 541.3 (Table 1). Under "Available Sanctions for Greatest Severity Level Prohibited Acts" in that table, a DHO may "[d]isallow ordinarily between 50% and 75% (27–41 days) of good conduct time credit available for year." *Id.* But under 28 C.F.R. § 541.4(a)–(b), "PLRA inmates"—inmates whose date of offense was on or after April 26, 1996—who commit "Greatest Severity Level Offenses" "will lose *at least* 41 days, or 75% of available credit if less than 54 days are available for the prorated period, *for each act committed*." (emphasis added). Thus, each 41-day sanction imposed by the DHO was the minimum sanction Garcia could receive. And section 541.4(b)(1) requires this minimum sanction to be imposed for "each act committed," with no limitation on the number of acts committed or the maximum aggregate sanction that may be imposed.

Section 541.4(b)(1) unambiguously allows a total of 82 days' loss of conduct credit to be imposed where an inmate commits multiple violations, regardless of when those violations were committed. Garcia's confusion may stem from the BOP's regulations governing how inmates earn GCT credits. Under 28 C.F.R. § 523.20(b)(1), the BOP "will award inmates up to 54 days of GCT credit for each year of the sentence imposed by the court." Because an inmate may only earn 54 days' GCT credits each year, it stands to reason that he may not lose more than 54 days of GCT credits each year. But unless an inmate is serving a sentence of one year or less, he will

---

[7] A Code 108 offense is defined as "[p]ossession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)." 28 C.F.R. § 541.3 (Table 1).

accumulate more than 54 days' GCT credits over the term of his imprisonment (54 days per year, to be exact). Thus, as an inmate accumulates GCT credits over the term of his imprisonment, the number of GCT credits available to lose increases, allowing an inmate who has accumulated two or more years of GCT credits to lose more than 54 days' GCT credits after committing multiple prohibited acts.

## V.     CONCLUSION

Because Garcia has failed to meet his burden of showing he is "in custody in violation of the Constitution or laws or treaties of the United States[,]" 28 U.S.C. § 2241(c)(3), his petition for a writ of habeas corpus, doc. no. 1, is **DENIED**.

Finally, I decline to issue a certificate of appealability, because Garcia has not made a substantial showing of a denial of a federal right. 28 U.S.C. § 2253(c); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).

The Clerk is directed to close this case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 14th day of July 2025.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge